NOT DESIGNATED FOR PUBLICATION

No. 128,669

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BOARD OF COUNTY COMMISSIONERS OF DOUGLAS COUNTY,
*Appellee*,

v.

WALTER C. SPENCER and CHERYL J. SPENCER,
*Appellants*,

v.

GARY ZIEGLER,
*Appellee*.


MEMORANDUM OPINION

Appeal from Douglas District Court; MARK A. SIMPSON, judge. Oral argument held May 12, 2026. Opinion filed July 17, 2026. Affirmed.

*Mark H. Epstein*, of The Epstein Law Firm, LLC, of Leawood, for appellants.

*Jeffrey L. Heiman*, of Stevens & Brand, LLP, of Lawrence, for appellee Board of County Commissioners of Douglas County.

*Todd N. Thompson*, of Thompson-Hall, P.A., of Lawrence, and *Jason B. Prier*, of The Prier Law Firm, L.L.C., of Lawrence, for appellee Gary Ziegler.


Before MALONE, P.J., ATCHESON, J., and MICHAEL B. BUSER, retired Court of Appeals Judge, assigned.

1

MALONE, J.:  Walter C. and Cheryl J. Spencer (the Spencers) appeal the district court's judgment following a bench trial granting the Board of County Commissioners of Douglas County (the Board) a permanent injunction against the Spencers from operating a salvage yard on their property. The Spencers also appeal the district court's pretrial grant of summary judgment against them on their counterclaims against the Board and on their third-party petition against Gary Ziegler. After thoroughly reviewing the record and the parties' arguments, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In 1988 or 1989, the Spencers acquired property in an unincorporated area in Douglas County. At the time, the property was in the B-2 general business zoning district. Salvage and junk yards were allowed in a B-2 zoning district only with a conditional use permit. The Spencers have never acquired or applied for a conditional use permit to operate a salvage or junk yard on the property.

In 1989, the Spencers submitted and the county approved a site plan which stated the Spencers would use the property for an automobile restoration business. In pertinent part, a staff review of the site plan read:

"The outdoor storage yard where untagged vehicles will be kept should be identified on the site plan. This storage area should be screened with a 6 feet chain link fence with slates woven into it to make it opaque. A good natural screen exists along the east side of the property consisting of hedge trees. Therefore, this screening fence is only needed along the south and west sides of the property."

The site plan was approved on the condition that "[a] six (6) foot screening fence around the south and west sides of the storage yard, be provided on the site plan."

In 1996, the Spencers applied to the Kansas Department of Transportation (KDOT) for a "Salvage Yard Certificate of Compliance." The application included a question for whether property could "be certified by the Kansas Junkyard and Salvage Control Act of 1967" with an associated box checked, "Yes." A letter dated April 10, 1996, from Craig Weinaug, identified as a county administrator, to Marvin Neukirch, who the letter identified as a "Salvage Administrator" at KDOT, noted that the Spencers had not submitted a site plan reflecting a fence as required, but an inspector approved a fence that had since been constructed. Weinaug concluded in pertinent part:

> "Based upon the actual location of this 6' fence as constructed, the storage area would include the area south of the garage and west of the machine shed and south of the machine shed. However, the storage area could also be interpreted to be limited to the much smaller area located immediately south of the machine shed. Given this ambiguity, I believe it is a reasonable interpretation of these documents to state that Mr. Spencer's storage includes but is not greater than the area south of the garage and west of the machine shed, and the area south of the machine shed."

KDOT eventually issued a "Salvage Storage Certificate of Compliance" to the Spencers.

On February 19, 2020, the Board amended the county's zoning regulations through a wholesale general revision. Under the revised regulations, the B-2 business district was recategorized as a GB general business district. The amended regulations prohibited salvage yards in GB districts and no longer authorized the grant of conditional use permits to operate a salvage yard in GB districts.

Over the years, the Spencers accumulated more vehicles which they stored on the property. By the inception of this case, the total number of vehicles eclipsed 100 and they "essentially cover the entirety of the property."

On March 15, 2021, Gary Ziegler, the owner of a neighboring property, raised a complaint about the Spencers over a fencing issue with Tonya Voigt who worked for the Douglas County Zoning and Codes Department. In September 2021, legal counsel for the county sent a letter to the Spencers "detailing the zoning violations" and outlining options to bring the property into compliance with the site plan and zoning regulations.

Nearly a year later, on August 23, 2022, the Board filed this case against the Spencers seeking injunctive relief and alleging the Spencers were unlawfully operating a salvage yard prohibited by the zoning regulations and contrary to the Spencers' site plan. The Spencers responded by raising several counterclaims against the Board and also bringing a third-party petition against Ziegler. The Spencers sought a declaratory judgment that the amended zoning regulations did not apply to them because they conflicted with unspecified state statutes and because the Board failed to give proper notice of the amendments during the amendment process. The Spencers raised a class of one equal protection claim alleging the Board applied the zoning regulations differently to others similarly situated in the county. The Spencers alleged enforcement of the zoning regulations would violate their civil rights under 42 U.S.C. § 1983. Finally, the Spencers alleged the Board and Ziegler engaged in a civil conspiracy against them by unlawfully trying to "shut down Spencers' salvage operation [*sic*]."

*Summary judgment proceedings*

As the case proceeded, the Board moved on November 17, 2023, for summary judgment on its claims for injunctive relief and on each of the Spencers' counterclaims against it. Ziegler separately moved for summary judgment on the Spencers' third-party claim against him for civil conspiracy.

To summarize the arguments as to the Spencers' counterclaims, the Board argued in its memorandum that the Spencers' challenge to the zoning regulations was untimely

4

under K.S.A. 12-760 and they could identify no harm resulting from the new amended regulations. On the equal protection counterclaim the Board argued the Spencers could not establish with evidence any other property owners who were similarly situated in every material respect or that those property owners were treated differently. As to the civil rights claim, the Board argued that the Spencers could not establish a property interest warranting due process protection, a legislative act does not implicate procedural due process, and the amended zoning regulations were not arbitrary or capricious. Finally, regarding the civil conspiracy counterclaim, the Board argued that the Spencers could not establish the elements that the Board and Ziegler had a meeting of the minds or committed some underlying tort giving rise to the claim.

Attached to the Board's memorandum in support were an affidavit from Mary Miller, a planner involved in the process to amend the zoning regulations; a resolution from the Board adopting the amended zoning regulations in 2020; an "Affidavit in Proof of Publication" by Emily Meisenheimer of the Lawrence Daily Journal-World attesting that notice to the public of the plan to consider amendments to the zoning regulations was published in the newspaper on November 24, 2019, along with a copy of the notice given; an affidavit from Voigt; a copy of the pre-amendment zoning regulations; a zoning district map; what appears to be a copy of Board meeting minutes where the Board approved the Spencers' site plan on the condition they amend it to include a fence around the storage yard; the Spencers' site plan review; the Spencers' application for a "Salvage Yard Certificate of Compliance" from KDOT; the letter from Weinaug to Neukirch; some ground and arial photographs of the Spencers' property over time; emails between Ziegler and Voigt where Ziegler lodged his complaint against the Spencers in 2021; a copy of the amended zoning regulations; and the Spencers' responses to the Board's interrogatories and requests for production of documents.

Ziegler argued in his motion for summary judgment that his complaint to Voigt and ensuing emails were protected under the First Amendment to the United States

Constitution and that the Spencers could produce no evidence that Ziegler and the Board or other county officials and representatives had a meeting of the minds or committed a tort underlying the conspiracy. Ziegler attached answers to interrogatories and requests for admissions, a letter from the Spencers' counsel dated September 30, 2021, requesting an investigation into Ziegler's compliance with his site plan; various emails enclosed with that letter about complaints made regarding Ziegler's property; and emails and records of various complaints lodged by Walter against others' use of their respective properties.

The Spencers responded to the Board's motion that they had a vested interest in continuing their automobile restoration business; that a dispute of material fact existed as to whether the amendments to the zoning regulations came with proper notice; that aerial photographs evidenced others similarly situated in the county treated differently than the Spencers; that evidence showed Ziegler was treated differently than the Spencers because Ziegler was in violation of his own site plan and the Board had not sued him; that the amended zoning regulations were an outright ban on his ability to have a salvage yard, which he ostensibly argued to be a right that the Board deprived him of; and a more general argument that the Board and Zieglar conspired against them. Attached to the Spencers' response were various emails, an affidavit from Walter, and just shy of 200 pages of aerial photographs and property records of many different properties belonging to third parties in Douglas County not involved in this case.

The Spencers responded to Ziegler's motion arguing that Ziegler engaged in civil conspiracy with the Board to find he illegally operated a salvage yard, and that Ziegler conspired with county staff and the Douglas County Sheriff's Department in a dispute between Ziegler and the Spencers over ownership of a fence between their properties.

On April 17, 2024, the district court issued a memorandum decision granting the Board's motion for summary judgment as to each of the Spencers' counterclaims and denying the motion on the Board's claims for injunctive relief. On the Board's claims, the

district court found that an affidavit from Walter created a dispute of material fact on whether the Spencers operated a salvage yard and whether the vehicle storage on the property adhered to the site plan.

As for the first counterclaim seeking a declaratory judgment that the zoning of the Spencer property was void, the district court found the Spencers' challenge to the reasonableness of the zoning regulations untimely under K.S.A. 12-760(a), which provides a 30-day statute of limitation. The district court also found that the Spencers never specified which statute the zoning regulations conflicted with and that nothing in the record established that the Board failed to give the statutorily required notice to amend the zoning regulations. On the second counterclaim for a class-of-one equal protection claim, the district court found that no reasonable mind could consider the summary judgment record and conclude that Zieglar or the owners of the various properties that the Spencers submitted aerial photographs of were similarly situated in all material respects to the Spencers.

On the Spencers' civil rights counterclaim, the district court found that the Spencers failed to "direct the court's attention to any evidence that purports to establish a substantive due process violation," though the district court tried to discern that the Spencers claimed that enforcement of the zoning regulations deprived them of the right to operate a salvage yard. The district court concluded that the Spencers could not operate a salvage yard under the pre-amendment version of the regulations because they never acquired a conditional use permit, and they had no vested right to have the old regulations remain unchanged. The district court applied that same analysis to any procedural due process claim and also found that the adoption of a zoning regulation was a legislative act to which procedural due process does not attach. The district court rejected the Spencers' equal protection claim embedded in the civil rights claim for the same reasons it granted summary judgment on the stand-alone equal protection counterclaim.

Finally, on the civil conspiracy counterclaim, the district court found that no evidence in the record supported that the Board or Ziegler committed any unlawful overt act underlying the conspiracy, nor did any evidence establish that the Board and Ziegler had a meeting of the minds. For those reasons, the district court denied each of the Spencers' counterclaims against the Board.

The district court entered a separate memorandum decision for the civil conspiracy claim against Ziegler. The district court found that the Spencers could not establish any unlawful overt act by any of the Board, county staff, or the sheriff's department, nor could the Spencers establish a meeting of the minds between Ziegler and any of those parties. The district court granted summary judgment for Ziegler against the Spencers.

*The bench trial*

The only claims remaining at that point were the Board's original claims seeking a permanent injunction because the Spencers' use of the property did not conform to the zoning regulations or their site plan, which the district court addressed in a bench trial held on August 26, 2024. The trial focused on whether the Spencers' site plan provided for a limited or unlimited area in which they could store vehicles and whether the Spencers operated a salvage yard in violation of the zoning regulations.

Ben Harris, a Douglas County code enforcement officer, testified first. Harris described knowing of three complaints against the Spencers' property and bringing those to the Spencers' attention through a letter of notification. Harris personally inspected the property in 2021 after Ziegler lodged a complaint and Harris observed "multiple vehicles all the way to the front fence, and very little room to navigate the property." Those vehicles appeared inoperable. Harris inspected the property again on August 8, 2024, just before trial, and noticed no changes from his first inspection. The Board walked Harris through various photographs of the property including an aerial photograph from 2002.

Harris estimated the 2002 photograph showed "somewhere in the range of 40 to 50 vehicles" on the property in the areas "more in line with the original site plan, with vehicles to the south of the machine shed, to the west of the machine shed, and then there were a few vehicles, approximately eight, north of the machine shed." Harris estimated the number of vehicles based on the most recent aerial photograph had increased to 115.

Voigt, who at that time was the zoning and codes director for the Douglas County Zoning and Codes Department, testified next. Voigt explained many of the Board's exhibits including a copy of the Spencers' site plan. Voigt agreed the county had no record that the Spencers had ever applied for a conditional use permit to operate a salvage yard. Voigt agreed the site plan did not expressly state where the outdoor storage of vehicles would be on the property but that it did state areas requiring gravel versus the other grass areas. Voigt agreed that she would expect the storage of vehicles to occur in the graveled areas. Voigt reviewed the Spencers' 1996 application with KDOT for a "salvage yard certificate," which accompanied the letter from Weinaug stating that based on his inspection, "Mr. Spencer's storage includes, but is not greater than, the area south of the garage and west of the machine shed and the area south of the machine shed." Voigt agreed that the site plan and Weinaug's interpretation of the storage area did not allow for unlimited vehicle storage on the property.

Voigt agreed that the Spencers were not grandfathered into being allowed to operate a salvage yard under the new zoning regulations, that they were operating a salvage yard, and that they were also not in compliance with their site plan. She did not believe the Spencers actually operated an auto restoration business because "of the number of vehicles being stored on the site." In Voigt's view, the Spencers' use of their property met the definition of a salvage yard in the amended regulations. The county had no success seeking voluntary compliance through Walter, and Voigt believed an injunction was the only way to compel compliance with the zoning regulations.

9

Walter testified in the Spencers' defense. Walter testified that he stores all of his vehicles outside before he can restore them. He agreed that his business was not open to the public and that "nothing that [he] own[ed], whether it's inside or outside, is sold, exchanged, or processed." Walter did not think the site plan had any limits on where he could store vehicles and he never had discussions about any limits. He agreed that the site plan review addressed an outdoor storage yard where he could keep vehicles, but responded, "Never," when asked if there was a restriction on storing vehicles anywhere else on the property. Walter denied operating a salvage yard and insisted instead that the vehicles were on his property for parts or to be restored. When asked about whether there were any changes in his "operation" since 1988, Walter responded that he was retired now. On cross-examination Walter agreed he had approximately 100 vehicles on the property. Walter conceded that he admitted in an answer to an interrogatory that "I have 10 or more salvage vehicles that constitutes having to have a KDOT salvage yard certification." When pressed about whether he argued earlier in the proceedings that he operated a salvage yard, Walter eventually responded, "I was grandfathered in."

In closing, the Board argued that if the Spencers wanted the site plan to include unlimited vehicle storage they could have included such a provision in the plan. The Board claimed that context from the site plan review, the Spencers' application for a salvage yard certificate through KDOT, and aerial photographs stated that the storage yard was limited to a set fenced in area on the property. The Spencers responded that they were unaware of any issues with zoning for decades and argued they were targeted due to Ziegler's complaint and that the site plan allowed unlimited vehicle storage. They also argued that the Board could not show irreparable harm to warrant in injunction.

The district court entered a written decision on November 19, 2024, including 113 findings of fact. The district court found that the site plan graphically showed through visual depiction that the property should have a limited vehicle storage area identified as certain graveled areas on the site plan in contrast to all other areas which were either

10

buildings, trees, grass, or other structures. The district court found that this interpretation was consistent with the requirement that the Spencers erect a fence around what the evidence showed they understood to be a storage area. Because the aerial photographs in evidence showed the Spencers were storing vehicles outside those storage areas, the district court found that the Spencers did not conform to their site plan.

The district court found that the Spencers' use of the property fit the definition of a salvage yard in the amended zoning regulations where the evidence showed that they owned a large number of inoperable vehicles, many of which sat and deteriorated over many years. The district court rejected a laches defense because the evidence showed that the county enforced zoning regulations based on complaints received and not sua sponte, so they acted within a reasonable amount of time from receiving a complaint that triggered their enforcement procedures. The district court also found that acquiescence and equitable estoppel did not apply where no evidence showed how the county acted to induce the Spencers to unlawfully use their land as a salvage yard and county staff did not have authority to excuse unlawful uses of property anyway. Finally, the district court found no evidence supporting "a clear, unequivocal, and decisive waiver of the County's right to enforce the site plan and zoning regulations."

Turning to the permanent injunction, the district court found an injunction was the only legal remedy because the Spencers were already violating the zoning regulations and site plan and that injury to the county without an injunction outweighed the Spencers' injury of the inconvenience of having to move the inoperable vehicles somewhere else and no longer using the land for vehicle storage to the same capacity. The district court found the injunction was not adverse to public interest because an injunction furthered the zoning regulations and their purpose and because there was no public interest in allowing unlawful salvage yards. The district court granted a permanent injunction and ordered that the Spencers would have six months to comply with the injunction before the

failure to comply would be enforceable through the district court's contempt powers. The Spencers timely appealed the district court's judgment.

SUMMARY JUDGMENT ON THE SPENCERS' COUNTERCLAIMS AGAINST THE BOARD

The Spencers first claim the district court erred in granting summary judgment on their counterclaims against the Board. The Board responds that the district court properly granted summary judgment in its favor on the Spencers' counterclaims.

> "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling is sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo. [Citation omitted.]" *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

*The Spencers are not entitled to a declaratory judgment.*

The Spencers' first counterclaim sought a declaratory judgment against the Board that the 2020 amended zoning regulations did not apply to them because they conflicted with unspecified state statutes and because the Board failed to give proper notice of the amendments during the amendment process. The Board argued below that the Spencers are not entitled to a declaratory judgment because they missed the statute of limitation to challenge the reasonableness of the zoning regulations, they did not identify any harm

that would result from applying the zoning regulations, and they merely speculated that the zoning regulations did not conform with some unspecified statute.

The Spencers responded that they had a vested interest in continuing their automobile restoration business, along with allegations that the Board schemed a bait and switch to "zone salvage yards out of existence right under the Spencers' nose." The Spencers also responded that there was a dispute of material facts as to whether proper notice was provided to amend the regulations because Walter testified that he would be grandfathered into the continued use of his land under the new regulations, that he never received any notice personally, and the zoning of his property was not addressed at any meeting. The Spencers' opening appellate brief on this issue, and most other issues, mirrors their responses to the summary judgment motions below nearly verbatim.

The district court granted summary judgment because the Spencers failed to timely challenge the reasonableness of the zoning regulations under K.S.A. 12-760(a), they failed to identify any statute the zoning regulations conflicted with, and nothing in the record indicated that the proper notice under K.S.A. 12-757 was not provided.

Turning first to the reasonableness of the regulations, the district court and the Board point out that K.S.A. 12-760(a) provides a 30-day statute of limitation for an aggrieved party to seek a determination of the reasonableness of a decision of the city or county. The Spencers do not contest that by the time they raised their counterclaims, they were years beyond the 30-day limit to challenge the reasonableness of the amended zoning regulations, which were amended in 2020. In fact, the Spencers' opening brief does not even address the district court's ruling that the counterclaim for declaratory judgment was untimely under K.S.A. 12-760(a). In their reply brief, the Spencers assert they are not challenging the reasonableness of the amended zoning regulations and that "[t]he procedural defects in adopting the ordinance do not have a 30-day time limitation on them." The Spencers cite no legal authority to support this statement.

13

K.S.A. 12-760(a) states that "[w]ithin 30 days of the final decision of the city or county, any person aggrieved thereby may maintain an action in the district court of the county to determine the reasonableness of such final decision." Douglas County adopted the amended regulations in 2020, and the Spencers readily claim that they have been aggrieved by the amended zoning regulations. The Spencers' counterclaim against the Board seeking a declaratory judgment against the enforcement of amended zoning regulations was filed in 2023. As a result, the counterclaim was untimely.

As for the Spencers' assertion that the time limitation in K.S.A. 12-760(a) does not apply to them because they are challenging the procedural defects in how the zoning regulations were adopted, and not the reasonableness of the zoning regulations, this argument was rejected in *Austin Properties, LLC v. City of Shawnee*, 320 Kan. 226, 229-30, 564 P.3d 1264 (2025). Austin Properties, LLC, petitioned the district court under K.S.A. 12-760 for a determination of the reasonableness of the City of Shawnee's zoning decision, including whether the city complied with the procedural requirements under K.S.A. 12-757 in making the zoning decision. Our Supreme Court considered whether the term "'reasonableness'" in K.S.A. 12-760 included a determination of whether the city's action was also lawful. 320 Kan. at 229-30. The court reasoned that Kansas courts had long considered the lawfulness of zoning regulations and that an unlawful zoning regulation was inherently unreasonable. 320 Kan. at 229-30. Thus, the court concluded that "we will continue to consider whether a zoning authority complied with relevant law, along with whether the decision was arbitrary, in rendering a decision on the reasonableness of its action under K.S.A. 12-760." 320 Kan. at 230.

We conclude the district court properly granted summary judgment on the Spencers' counterclaim against the Board for declaratory judgment because the claim was untimely under K.S.A. 12-760(a). Although we could end our analysis here, we will briefly address the district court's other reasons for granting summary judgment on this counterclaim. As the Board points out, the Spencers have not identified any state statutes

14

they claim to conflict with the amended zoning regulations. In fact, they have not briefed this issue on appeal, and it is considered waived and abandoned. See *In re Adoption of Baby Girl G.*, 311 Kan. 798, 803, 466 P.3d 1207 (2020).

The Spencers continue to challenge the lawfulness of the amended zoning regulations based on insufficient notice. The Spencers maintain there were genuine issues of material fact as to whether Walter had actual notice of the impending changes to the B-2 zoning district, but they identify no legal authority that required Douglas County to provide Walter with actual notice of the changes. The only statute that was brought to the district court's attention about notice was K.S.A. 12-757, and the district court properly found there were no material issues of fact as to whether Douglas County had complied with the notice provisions in that statute. Walter also asserted he was to be "grandfathered in" on any changes to the zoning regulations but failed to support that claim with any evidence. The district court did not err in granting summary judgment on this point.

Finally, we observe that the Board argues on appeal it was entitled to summary judgment because the Spencers' declaratory judgment counterclaim was a "nonjusticiable dispute." The district court did not address this claim in granting summary judgment and we decline to address the argument on appeal in any detail, except to find that the Spencers were an "aggrieved" party with standing to challenge the Board's passage of the amended zoning regulations had the challenge been brought in a timely manner. See *Hacker v. Sedgwick County*, 48 Kan. App. 2d 164, 169-73, 286 P.3d 222 (2012). Otherwise, for the reasons we have already stated, we conclude the district court did not err in granting summary judgment on the Spencers' counterclaim for declaratory judgment on the enforcement of the 2020 zoning amendments.

*Summary judgment was proper on the Spencers' equal protection counterclaim.*

The Spencers' second counterclaim raised a class of one equal protection claim alleging the Board applied the zoning regulations differently to others similarly situated in the county. "Both the United States Supreme Court and the Kansas Supreme Court have interpreted the Equal Protection Clause to mean that all who are similarly situated be treated alike." *State v. Little*, 58 Kan. App. 2d 278, 280, 469 P.3d 79 (2020). "So the first hurdle someone claiming an equal-protection violation must clear is the showing that he or she is similarly situated to people who are treated differently under the law." 58 Kan. App. 2d at 280. Similarly situated means similarly situated in all material respects. *Kansas Penn Gaming LLC v. Collins*, 656 F.3d 1210, 1217 (10th Cir. 2011).

The Board argued below that the Spencers could not prove any others were similarly situated in all material respects and therefore would fail as a matter of law to meet that element of their equal protection counterclaim. The Spencers responded that the Board failed to come forward with evidence that there were no others similarly situated and that the nearly 200 pages of aerial photographs and property records attached to their motion show others similarly situated in that they own property in the area with outdoor vehicles. The district court found that the Spencers failed to come forward with evidence of anyone similarly situated in all material aspects because the evidence of other landowners did not establish zoning designation or the occupancy of the landowners.

The Spencers argue on appeal that the Board failed to meet its initial burden to come forward with evidence proving that no others were similarly situated, but the Spencers' interpretation of the Board's initial burden is not the law. The Kansas Supreme Court has held that

> "we agree with the United States Supreme Court that the burden is not on 'the party
> moving for summary judgment to produce evidence showing the absence of a genuine

16

issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof. Instead, . . . *the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.*' (Emphasis added.)" *U.S.D. No. 232. v. CWD Investments*, 288 Kan. 536, 555, 205 P.3d 1245 (2009).

This court has specifically addressed an equal protection challenge in the context of summary judgment and similarly held "the burden is on the party claiming an equal protection violation to demonstrate that he or she is treated differently than others 'similarly situated in all material respects' and that there is no reasonable basis for the defendant's actions." *Neis v. Board of Douglas County Comm'rs*, No. 106,513, 2013 WL 310346, at *15 (Kan. App. 2013) (unpublished opinion). The Spencers complain that the district court required them to prove their case at the summary judgment stage when all they needed to do was allege facts in their pleadings sufficient to make a claim. But the Board had filed a summary judgment motion; not a motion for judgment on the pleadings. The burden is on the nonmoving party to come forward with evidence creating material issues of fact to avoid summary judgment. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Here, the Board in its memorandum in support of its motion argued how the Spencers would be unable to show anyone similarly situated based on the summary judgment record. That argument should have triggered the Spencers' burden to come forward with any token of evidence that can establish the similarly situated element under their equal protection and summary judgment burden. *U.S.D. No. 232*, 288 Kan. at 555. Instead, after the Board pointed out a lack of evidence, the Spencers needed to produce evidence of only one other similarly situated landowner to preclude summary judgment, which they failed to do.

The Spencers' core argument on this issue is that they are similarly situated to others in the county who have outdoor vehicles in non-industrial districts. But that

simplified analysis omits other material respects. For example, the Spencers do nothing in the summary judgment record to establish the length of time those other landowners had outdoor vehicles, how many vehicles they had, the conditions or operation status of those vehicles, the landowners' site plans, how their use and storage of those vehicles conforms to those site plans, those landowners' level of cooperation with the county, or that the county was even aware of any zoning violations as to those properties to seek enforcement in the first place. Just showing that another landowner had vehicles on their properties in non-industrial zones falls short of establishing others similarly situated in *all material respects* where these types of facts could drastically alter the analysis. See *Neis*, 2013 WL 310346, at *15 (finding that summary judgment for a board of county commissioners was appropriate where Neis failed to show he and his neighbors were similarly situated due to differences in their use of the land).

Ziegler is also not similarly situated to the Spencers based on the summary judgment record. Walter claimed in his affidavit that Ziegler is using his property based on an expired site plan and that Ziegler remodeled a building on his property in violation of the zoning regulations. That evidence does not further the Spencers' claims because whether or not the Board seeks enforcement of separate and different violations against Ziegler has nothing to do with whether Ziegler similarly operated a salvage yard on his property. Thus, the summary judgment record includes no evidence that any other landowner in the county is similarly situated to the Spencers in all material respects. As a result, we conclude the district court did not err in granting summary judgment on the Spencers' equal protection counterclaim against the Board.

*The Spencers have abandoned their civil rights counterclaim on appeal.*

The Spencers' third counterclaim against the Board alleged enforcement of the zoning regulations would violate their civil rights under 42 U.S.C. § 1983. The district court found that while it had difficulty discerning a factual basis for a substantive due

18

process violation, it seemed as though the Spencers were arguing that because the amended zoning regulations banned salvage yards, the Spencers were deprived of their interest in potentially applying for a conditional use permit to operate a salvage yard under the old regulations. The district court ultimately found no substantive or procedural due process violation. On appeal, the Spencers again argue that the burden was on the Board to show there was no genuine issue of material fact on this issue rather than the Spencers needing to come forward with some evidence of a genuine issue of material fact. That argument fails for the same reason addressed above. Otherwise, the Spencers' entire argument on appeal on this issue consists of two pages of briefing with no citation to any legal authority. We find this issue inadequately briefed and abandoned on appeal. See *In re Marriage of Williams*, 307 Kan. at 960, 977, 417 P.3d 1033 (2018) (holding issues not adequately briefed are deemed waived or abandoned).

Moreover, even if the Spencers had adequately briefed the issue, we find it would have no merit. As the Board points out in its brief, any substantive due process claim by the Spencers would fail because a landowner has no vested interest in the issuance of a conditional use permit that is discretionary. See *Zimmerman v. Board of Wabaunsee County Commr's*, 293 Kan. 332, 347, 264 P.3d 989 (2011). Likewise, any procedural due process claim by the Spencers would fail because "the adoption of a general zoning law is a legislative act, and . . . constitutional procedural due process does not govern the enactment of legislation." *Onyx Properties LLC v. Bd. of Com'rs of Elbert County*, 838 F.3d 1039, 1044-45 (10 Cir. 2016). We conclude the district court did not err in granting summary judgment on the Spencers' civil rights counterclaim.

*Summary judgment was proper on the Spencers' civil conspiracy counterclaim.*

The Spencers' final counterclaim alleged that the Board and Ziegler engaged in a civil conspiracy against them by unlawfully trying to shut down the Spencers' salvage yard. "Kansas recognizes the five elements of a civil conspiracy to include: '(1) two or

19

more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.'" *State ex rel. Mays v. Ridenhour*, 248 Kan. 919, 927, 811 P.2d 1220 (1991). The district court granted summary judgment for the Board on the Spencers' civil conspiracy claim because the Spencers could produce no evidence supporting an unlawful overt act or a meeting of the minds between the Board and Ziegler.

In district court, the Spencers speculated that Ziegler and the Board had a meeting of the minds to conspire against them, but the Spencers provided no evidence to create a dispute of material fact on that element of a civil conspiracy. Walter's affidavit alleged that Voigt ignored Walter's complaints about Ziegler's unrelated zoning violations and that it appeared as though Voigt and Ziegler had a personal relationship. The Spencers also attached a few emails between Voigt and Ziegler to their memorandum opposing summary judgment where Ziegler discussed trying to compromise with Walter but had no luck, so he wished to lodge a formal complaint to get the county involved. Voigt responded that her office had an initial conversation with Walter but that her office was prioritizing responses based on the order they received complaints.

None of that evidence even in the light most favorable to the Spencers establishes that Voigt did anything other than ostensibly her job to investigate a zoning complaint. Nor does it show that Ziegler and the Board ever had a meeting of the minds to somehow unlawfully pursue enforcement of the zoning regulations against the Spencers. Even if, in the light most favorable to the Spencers, Voigt had some degree of personal relationship with Ziegler and even if she ignored the Spencers' complaints about Ziegler's use of his property, that does not show how the Board acted unlawfully in its enforcement actions against the Spencers and does not show the Board ever had a meeting of the minds with Ziegler to further some unlawful purpose of Ziegler's. See *Brinker v. McCaslin*, 63 Kan. App. 2d 724, 746-47, 538 P.3d 1101 (2023) (discussing how a party must show a meeting of the minds to accomplish an unlawful overt act to "prevent[] someone from becoming

20

inadvertently liable for another's wrongs"). Because the Spencers could produce no evidence establishing the meeting of the minds element as to the Board, we conclude the district court correctly granted summary judgment on this counterclaim.

SUMMARY JUDGMENT ON THE SPENCERS' THIRD-PARTY CLAIM AGAINST ZIEGLER

The Spencers next claim the district court erred in granting summary judgment on their third-party claim against Ziegler. Ziegler sought summary judgment separate from the Board on the sole claim against him, that he engaged in a civil conspiracy against the Spencers. The Spencers claimed that Ziegler committed civil conspiracy with the Board as explained above, and also with the Douglas County Sheriff's Office and Sarah Plinsky, the county administrator. The latter claim stems from an incident in 2021 where Ziegler contacted Plinsky alleging that part of the Spencers' fence intruded onto Ziegler's property. That culminated with Ziegler contacting the sheriff's office to accompany him and stand by while he removed the Spencers' fence. The Spencers sued Ziegler for conversion, and a jury found that the land the fence sat on belonged to the Spencers through adverse possession and awarded them money damages.

The Spencers' civil conspiracy claim between Ziegler and the Board fails as explained above. The Spencers produced no evidence establishing a meeting of the minds. As to the claim between Ziegler and Plinsky, the Spencers supported that claim through an affidavit from Walter testifying that Ziegler called the sheriff's office and wrongfully converted his fence, an email between Ziegler and Plinsky where Ziegler asked Plinsky to set up a fence viewing, and some emails between Plinsky and the Spencers' counsel discussing the purpose of the fence viewing. But even assuming that Ziegler had a wrongful purpose in mind, nothing in that evidence allows a reasonable inference that Plinsky had a meeting of the minds with Ziegler to further his wrongful purpose. See *Brinker*, 63 Kan. App. 2d at 746-47. The uncontroverted evidence shows

21

that Plinsky's role in the fence dispute was essentially just as an initial point of contact for Ziegler and to briefly address the purpose of a fence viewing with Ziegler's counsel.

As to the sheriff's office, the only evidence in the summary judgment record about the sheriff's office's involvement in the fence dispute was Walter's affidavit where he testified that Ziegler called the sheriff's office, that the office determined the fence belonged to Ziegler, that they prohibited Walter from interfering with Ziegler taking the fence down, and that a jury ruled in the Spencers' favor that the fence belonged to them through adverse possession. The district court found that this evidence showed at worst that the sheriff's office made a mistake about who owned the fence, but nothing supported that the office had a meeting of the minds with Ziegler to further a purpose to harm the Spencers. As above, if the sheriff's office innocently furthered some nefarious purpose, that is not enough to support a civil conspiracy claim. See *Brinker*, 63 Kan. App. 2d at 746-47. We agree with the district court that the evidence, in the light most favorable to the Spencers, does not establish that the sheriff's office ever had a meeting of the minds with Ziegler to further some harmful purpose. Thus, we conclude the district court did not err in granting summary judgment on the Spencers' third-party claim against Ziegler.

## THE DISTRICT COURT'S PERMANENT INJUNCTION AGAINST THE SPENCERS FROM OPERATING A SALVAGE YARD ON THEIR PROPERTY

Finally, the Spencers claim the district court erred in finding after a bench trial that the Spencers were violating the zoning regulations and in granting the Board a permanent injunction against the Spencers from operating a salvage yard on their property. The Board asserts the district court properly found that the Spencers were in violation of their site plan and were using their property as an unlawful salvage yard.

For mixed questions of fact and law, this court conducts a bifurcated review. *Gannon v. State*, 305 Kan. 850, 881, 390 P.3d 461 (2017). This court reviews questions

22

of fact for substantial competent evidence. 305 Kan. at 881. Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *Granados v. Wilson*, 317 Kan. 34, 41, 523 P.3d 501 (2023). When determining whether substantial competent evidence exists, "an appellate court must not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact." 317 Kan. at 41. This court has unlimited review over the legal conclusions based on those factual findings. *Gannon*, 305 Kan. at 881.

As a threshold issue, the Board argues that the Spencers have waived and abandoned argument on this issue by copying and pasting their arguments from their memorandum in opposition to summary judgment below into their appellate brief, which does not specifically address any particular claim of error. While the Board is correct that most, though not all, of the Spencers' opening appellate brief is a verbatim copy of arguments made in response to the Board's summary judgment motion below, much of the summary judgment record was also admitted at trial and the issues remained largely the same between the summary judgment stage of the proceedings and trial. We reject the Board's claim that the Spencers have inadequately briefed this issue.

Turning to the merits, the trial hinged on whether the Spencers violated either their site plan or the zoning regulations. Starting with the site plan, the district court found that the site plan graphically identified areas where the Spencers could store vehicles in that the vehicle storage area was identified as graveled areas while the rest of the property was either grass, trees, or buildings. The district court found that this interpretation matched other evidence such as the approval of the site plan conditioned upon the Spencers amending it to show a fence around the storage yard, which showed the storage yard was, in fact, finite and intended to be the graveled areas. The district court also found that the Spencers understood that interpretation as well through their 1996 application for a salvage yard certificate from KDOT, which included a copy of the site plan with additional writing on it that Walter admitted to adding. Among the writing,

23

Walter wrote "storage area" in that fenced in and graveled area. The district court then concluded that because the site plan had a finite storage, and because aerial photographs showed that vehicles "blanket the property covering almost all areas where there are not structures," the Spencers were in violation of their site plan.

Each of these findings was supported by substantial competent evidence. In addition to the testimony, the district court could consider in the evidence a copy of the site plan, aerial photographs of the Spencers' property over the years, and the Spencers' application to KDOT. The trial exhibits themselves are not part of the record on appeal, but many of them are available in the appellate record as part of the summary judgment record and those match the district court's findings. For example, the site plan in the record identifies graveled areas south and west of the machine shed consistent with the district court's findings and the Board's written approval of the site plan conditioned on a fence to the south and west of the "storage yard" also in the record.

Many of those exhibits were also addressed in the testimony. Voigt testified that the minutes entry showing that the Board approved the Spencers' site plan conditioned on a fence around the south and west sides of the "storage yard," showing that there was a planned storage area. Voigt reviewed the site plan in evidence and interpreted it to not allow unlimited vehicle storage because it would have called for additional fencing if so. Voigt had seen no records suggesting that the Spencers had unlimited vehicle storage under their site plan. The Board walked Harris through the aerial photographs, and Harris testified that they showed increasing numbers of vehicles strewn throughout the Spencers' property over time. And Walter indeed testified consistent with the district court's findings that he intended to put a fence south of "the building" which would be consistent with an interpretation of a designated storage area at the south of the property.

That evidence supported the district court's legal conclusion that the site plan allowed for finite vehicle storage within a fenced and graveled area toward the south of

24

the property, and over time the Spencers obtained more vehicles and stored them outside of those areas in violation of the plan. On appeal, the Spencers focus on evidence supporting their position, but their arguments ignore our standard of review and that we will not reweigh conflicting evidence. *Granados*, 317 Kan. at 41. We find that substantial competent evidence supported the district court's factual findings, and affirm its legal conclusion drawn from that evidence that the Spencers violated their site plan.

Turning to whether the Spencers violated the zoning regulations, the Douglas County Zoning Regulations, Section 12-315.1, which the district court cited, defines salvage yards as:

"A parcel of land with or without buildings used for storage of discarded materials where secondhand materials may be bought, sold, exchanged, store[d], processed, or handled. Materials include but are not limited to scrap iron and other ferrous metals, rubber tires, discarded goods, machinery, and inoperable motor vehicles."

The district court found that photographs in evidence showed that many of the Spencers' vehicles were deteriorated and rusted to a point that many appeared inoperable. Walter also testified that some vehicles were inoperable and that he removed engines from some of the vehicles. The aerial photographs depicted vehicles not moving at all over the years and that new vehicles were added around the old, unmoving ones. Voigt testified that the photographs depicted inoperable vehicles because they showed vehicles that had not moved. Harris agreed that the aerial photographs depicted "the majority of the vehicles" as being inoperable with extensive rust. Based on this evidence, the district court found that most of the vehicles met the definition of inoperable vehicles. The district court then drew a reasonable inference from the images of deteriorating and inoperable vehicles that they were discarded. Thus, the Spencers' property met the definition of a salvage yard because it stored discarded materials. As a result, we affirm

the district court's legal conclusion drawn from the evidence that the Spencers violated the zoning regulations by using their property as a salvage yard.

The district court also found that the Spencers' use of the land as a salvage yard was not excused through laches, waiver, acquiescence, or equitable estoppel. On appeal, the Spencers challenge the district court's findings only as to laches and acquiescence and thus have waived any challenge to the district court's waiver and stand-alone equitable estoppel findings for the failure to brief those issues. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 803, 466 P.3d 1207 (2020).

"Laches is an equitable doctrine meant to bar stale claims." *In re Marriage of Doud and Modrcin*, 59 Kan. App. 2d 244, 253, 480 P.3d 800 (2020). "The doctrine may apply when a party brings a claim after an unreasonable and unexplained length of time, and that delay, combined with other circumstances, prejudices the defending party." 59 Kan. App. 2d at 253. This court reviews the district court's findings on laches for an abuse of discretion. 59 Kan. App. 2d at 254. A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *In re A.S.*, 319 Kan. 396, 400, 555 P.3d 732 (2024). A judicial action is not arbitrary, fanciful, or unreasonable unless no reasonable person would have taken the view adopted by the district court. 319 Kan. at 400. The Spencers, as the party asserting an abuse of discretion, bear the burden to show it. 319 Kan. at 400.

The district court found that the evidence showed that the Board did not bring its claim in an unreasonable amount of time where Voigt "credibly testified" that the code enforcement process is complaint based, and that the county takes time to try to help property owners come into compliance on their own if possible. The Spencers argue that they used their property in the same way without issue for decades, but that does not change the evidence that the Board had no reason to seek enforcement for most of that time where nobody complained to trigger an enforcement action. And given the evidence

26

that the number of vehicles on the property has increased over time, it is logical to conclude that it took time for the property to reach a point where the Spencers violated their site plan or the zoning regulations and enforcement even became necessary. The Spencers fail to show that no reasonable person would agree with the district court's conclusion that the Board acted in a timely manner in enforcing the zoning regulations.

Turning to acquiescence, this court has found acquiescence a species of equitable estoppel and defined it as: "'an assertion of rights inconsistent with past conduct, silence by those who ought to speak, or situations wherein it would be unconscionable to permit a person to maintain a position inconsistent with one in which [the person] has acquiesced.'" *Oxy USA, Inc. v. Red Wing Oil, LLC*, 51 Kan. App. 2d 1028, 1038, 360 P.3d 457 (2015). Equitable estoppel is appropriate when the asserting party establishes

> "'that another party, by acts, representations, admissions, or silence when that other party had a duty to speak, induced the party asserting estoppel to believe certain facts existed. The party asserting estoppel must also show that the party reasonably relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts.'" *Steckline Communications, Inc. v. Journal Broadcast Group of Kansas, Inc.*, 305 Kan. 761, 770, 388 P.3d 84 (2017).

The district court found that acquiescence and equitable estoppel did not apply where no evidence showed how the county acted to induce the Spencers into unlawfully using their land as a salvage yard and county staff did not have authority to excuse unlawful uses of the property. We review decisions on equitable estoppel for an abuse of discretion. *In re Estate of Prichard*, 37 Kan. App. 2d 260, 279, 154 P.3d 24 (2007).

The Spencers' claim on acquiescence essentially mirrors their laches claim, plus a brief argument that the Spencers used their property as they did based on representations such as the approval of the site plan in the 1996 KDOT application. But, as above, the district court heard credible evidence that the Board only engaged in enforcement actions

27

based on complaints like Ziegler's. The district court heard no evidence to show how the county acted to induce the Spencers into unlawfully using their land as a salvage yard. Moreover, as the district court found, county staff did not have authority to excuse unlawful uses of property, and the Spencers were charged with knowledge of the zoning regulations. *M.S.W., Inc. v. Marion County Bd. of Zoning Appeals*, 29 Kan. App. 2d 139, 156, 24 P.3d 175 (2001) (finding that statements from the county planning commission about conformity with zoning regulations was akin to an approval by city officials of a prohibited use of land, which had no legal effect); *Hockenbarger v. City of Topeka*, No. 103,604, 2012 WL 6634359, at *7 (Kan. App. 2012) (unpublished opinion) ("Thus, the Ropers were presumed to have knowledge of the City's ordinances, and they cannot claim that they relied on the City zoning inspector's approval for the location of their shed, even if that information was incorrect."). Thus, we agree with the district court that the Spencers' use of the land as a salvage yard was not excused by acquiescence.

Finally, the district court's memorandum decision also included findings on whether to grant a permanent injunction. To obtain a permanent injunction, the Board must demonstrate that the absence of an injunction would lead to irreparable harm, that no adequate legal remedy exists to address the harm, that the injury caused by the harm outweighs the harm any injunction may cause the Spencers, and that an injunction would not be adverse to the public interest. See *Downtown Bar and Grill v. State*, 294 Kan. 188, 191, 273 P.3d 709 (2012). The district court found the Board satisfied these requirements. The Spencers do not address the district court's findings and conclusions on this issue and have made no argument about whether a permanent injunction was the proper remedy to enforce the zoning regulations. Thus, the Spencers have waived any argument on this issue for failure to brief the issue. *In re Adoption of Baby Girl G.*, 311 Kan. at 803.

Affirmed.